**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTHA O. VILLALOBOS,<br><br>  Plaintiff,<br><br>  vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social<br>Security,<br><br>  Defendant. | ) Case No. CV 13-1119-JPR<br>)<br>)<br>) MEMORANDUM OPINION AND ORDER<br>) REVERSING COMMISSIONER AND<br>) REMANDING FOR FURTHER<br>) PROCEEDINGS<br>)<br>)<br>)<br>) |

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed February 24, 2014, which the Court has taken under submission without oral argument. For the reasons discussed below, the Commissioner's decision is reversed and this action is remanded for further proceedings.

**II. BACKGROUND**

Plaintiff was born on April 25, 1957. (Administrative Record ("AR") 146.) She has a sixth-grade education[1] (AR 30) and worked for more than 20 years as a packager in a manufacturing plant (AR 30-31, 170, 180).

On July 19, 2010, Plaintiff filed applications for DIB and SSI, alleging she had been disabled since March 18, 2010, because of "whiplash from neck to lower back," spinal arthritis, "severe neck pain," degenerative disc disease, and lumbar spondylosis. (AR 44-47, 146-52, 179.) After Plaintiff's applications were denied, she requested a hearing before an Administrative Law Judge. (AR 75-78.) A hearing was held on December 22, 2011, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert ("VE"). (AR 26-43.) On January 5, 2012, the ALJ issued a written decision finding Plaintiff not disabled. (AR 15-20.) On February 29, 2012, Plaintiff requested review of the ALJ's decision (AR 8), and she subsequently submitted additional evidence in support of her claims (AR 508-77). On December 14, 2012, after considering the new evidence, the Appeals Council denied review. (AR 1-5.) This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and

---

[1] Plaintiff stated in a disability report that she completed only the first grade (AR 180), but that appears to have been a mistake because she testified at the hearing that she had received a "primary" education in Mexico, which was equivalent to completing the sixth grade (AR 30).

supported by substantial evidence based on the record as a whole. Id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

**IV.  THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R.

§§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform her past work; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving she is

---

[2] RFC is what a claimant can do despite existing exertional and nonexertional limitations. §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

unable to perform past relevant work.  <u>Drouin</u>, 966 F.2d at 1257.
If the claimant meets that burden, a prima facie case of
disability is established.  <u>Id.</u>  If that happens or if the
claimant has no past relevant work, the Commissioner then bears
the burden of establishing that the claimant is not disabled
because she can perform other substantial gainful work available
in the national economy.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).
That determination comprises the fifth and final step in the
sequential analysis.  §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at
828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

    B.   <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 18, 2010, the alleged onset date.  (AR 17.)  At step two, the ALJ concluded that Plaintiff had the severe impairment of "chronic body pain."  (<u>Id.</u>)  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing.  (AR 18-19.)  At step four, the ALJ found that Plaintiff had the RFC to perform the "full range of medium work."[3]  (AR 19-20.)  Based on the VE's testimony, the ALJ concluded that Plaintiff could perform her past relevant work as a packager, as both generally and actually performed.  (AR 20.)  Accordingly, the ALJ determined that Plaintiff was not disabled.  (<u>Id.</u>)

---

[3] "Medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  §§ 404.1567(c), 416.967(c).

5

**V.    DISCUSSION**

<u>Substantial Evidence Does Not Support the ALJ's RFC Assessment</u>

Plaintiff alleges that evidence submitted to the Appeals Council renders the ALJ's finding that Plaintiff can perform the full range of medium work unsupported by substantial evidence. (J. Stip. at 4-10, 15-16.)

A.    <u>Applicable law</u>

A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ must consider all the medical evidence in the record and "explain in [his] decision the weight given to . . . [the] opinions from treating sources, nontreating sources, and other nonexamining sources." 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii); <u>see also</u> §§ 404.1545(a)(1), 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (RFC must be "based on all of the relevant evidence in the case record"). In making an RFC determination, the ALJ may consider those limitations for which there is support in the record and need not consider properly rejected evidence or subjective complaints. <u>See</u> <u>Bayliss</u>, 427 F.3d at 1217 (upholding ALJ's RFC determination because "the ALJ took into account those limitations for which there was record support that did not depend on [claimant's] subjective complaints"); <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ not

required to incorporate into RFC evidence from treating-physician opinions that were "permissibly discounted").

Moreover, Social Security Administration regulations "permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012); see also 20 C.F.R. §§ 404.970(b), 416.1470(b). "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Brewes, 682 F.3d at 1163; accord Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011); see also Borrelli v. Comm'r of Soc. Sec., __ F. App'x __, 2014 WL 1492736, at *1 (Apr. 17, 2014) (remand necessary when "reasonable possibility" exists that "the new evidence might change the outcome of the administrative hearing").

B.  Relevant facts[4]

On December 29, 2010, Dr. Anh Tat Hoang performed a complete orthopedic evaluation of Plaintiff at the request of the Social Security Administration.[5]  (AR 403-06.)  Dr. Hoang found that

---

[4]Because the parties are familiar with the facts, they are summarized here only to the extent relevant to the contested issue.

[5]Dr. Hoang wrote that his practice was "limited to Orthopedics." (AR 406.)

7

1  Plaintiff had a normal gait, could squat and heel-toe walk, sat
2  comfortably in a chair, and could get on and off the examination
3  table without difficulty. (AR 404.) She had tenderness over her
4  paracervical muscles but full range of motion of the cervical
5  spine and no tenderness, spasm, or deformity of the thoracic
6  spine. (Id.) She had tenderness over the right paraspinal
7  muscles without spasm and reduced range of motion of the lumbar
8  spine. (Id.) Straight-leg raising was negative. (Id.)
9  Plaintiff had tenderness over the right shoulder joint but full
10 range of motion, and she had tenderness over the lateral aspect
11 of her right elbow but an otherwise normal elbow examination.
12 (AR 405.) Testing showed "[m]ild tendinitis" of both wrists.
13 (Id.) Tests for "hip pathology" were "mildly positive" in the
14 right hip but normal in the left. (Id. (emphasis omitted).)
15 Plaintiff's knees were tender upon palpation, but Dr. Hoang found
16 "[n]o signs of internal derangement." (Id.) Plaintiff had "[n]o
17 grip strength loss and no atrophy of the extremities" and intact
18 motor strength, sensation, and reflexes. (AR 406.)
19      Dr. Hoang diagnosed "[c]ervico-thoracic sprain/strain"
20 without radiculopathy; right-shoulder, right-hip, and bilateral
21 knee sprain or strain; right-wrist tendinitis; history of left-
22 wrist operation with residual tendinitis; and right-elbow sprain
23 or strain. (Id.) Dr. Hoang believed Plaintiff could lift and
24 carry 50 pounds occasionally and 25 pounds frequently, stand and
25 walk for six hours in an eight-hour workday with changes in
26 position and normal breaks, and sit for six hours in an eight-
27 hour workday. (Id.)
28      On February 6, 2011, Dr. Craig Billinghurst, who specialized

in internal medicine, reviewed Plaintiff's medical records and completed a physical-residual-functional-capacity assessment.[6] (AR 417-24.) He listed Plaintiff's diagnoses as "disorder of the spine" and "carpal tunnel syndrome." (AR 417.) Dr. Billinghurst believed Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, stand and walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, perform unlimited pushing and pulling, and perform "frequent" fine manipulation with both hands. (AR 418, 420.) On May 10, 2011, Dr. F. Wilson, a general practitioner, reviewed Plaintiff's medical records and affirmed Dr. Billinghurst's RFC assessment.[7] (AR 443-44.)

On October 22, 2011, Plaintiff saw Dr. Yi Lang at the Arthritis and Osteoporosis Center, apparently for the first time, for a "consult." (AR 479-84.) Dr. Yang noted that Plaintiff had complained of shoulder, heel, hip, and low-back pain for the

---

[6] Dr. Billinghurst's electronic signature includes a medical specialty code of 19, indicating internal medicine. (AR 424); see Program Operations Manual System (POMS) DI 26510.089, U.S. Soc. Sec. Admin. (Oct. 25, 2011), http://policy.ssa.gov/poms.nsf/lnx/0426510089; POMS DI 26510.090, U.S. Soc. Sec. Admin. (Aug. 29, 2012), http://policy.ssa.gov/poms.nsf/lnx/0426510090.

[7] Dr. Wilson's electronic signature includes a medical specialty code of 12, indicating "Family or General Practice." (AR 444); see Program Operations Manual System (POMS) DI 26510.089, U.S. Soc. Sec. Admin. (Oct. 25, 2011), http://policy.ssa.gov/poms.nsf/lnx/0426510089; POMS DI 26510.090, U.S. Soc. Sec. Admin. (Aug. 29, 2012), http://policy.ssa.gov/poms.nsf/lnx/0426510090.

previous 16 years and was taking the medication naproxen.[8] (AR 479.) Upon examination, Dr. Yang found that Plaintiff had tenderness on palpation and "abnormal" motion of both shoulders and hips, tenderness on palpation of the cervical and lumbar spine, spasm of the muscles of the thoracic and lumbar spine, positive straight-leg tests on the right and left, tenderness but normal motion of the knee, and 16 positive "trigger points" out of 18.[9] (AR 482.) Plaintiff had normal motor strength, sensation, reflexes, gait, and stance. (Id.) Dr. Yang assessed "[l]ocalized primary osteoarthritis" of the right foot, trochanteric bursitis,[10] subacromial bursitis,[11] "possible"

---

[8] Naproxen is an NSAID used to relieve pain, tenderness, swelling, and stiffness caused by various types of arthritis. Naproxen, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681029.html (last updated Feb. 19, 2014). Nonprescription naproxen is used to reduce fever and relieve mild pain. Id.

[9] Trigger points, or tender points, "are pain points or localized areas of tenderness around joints, but not the joints themselves," that "hurt when pressed with a finger." Fibromyalgia Tender Points, WebMD, http://www.webmd.com/fibromyalgia/guide/fibromyalgia-tender-points-trigger-points (last updated May 24, 2014). In the past, a fibromyalgia diagnosis was based on whether a person had pain when tender points were pressed firmly, but "[n]ewer guidelines don't require a tender point exam"; "[i]nstead, a fibromyalgia diagnosis can be made if a person has had widespread pain for more than three months — with no underlying medical condition that could cause the pain." Fibromyalgia, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/fibromyalgia/basics/tests-diagnosis/con-20019243 (last updated Feb. 20, 2014). Plaintiff mistakenly states that Dr. Yang found that Plaintiff had 18 positive trigger points, rather than 16, at several of her examinations. (See J. Stip. at 4-5.)

[10] "Bursitis is an inflammation of the small sacs of fluid (bursae) that cushion and lubricate the areas between tendons and bones." Trochanteric Bursitis - Topic Overview, WebMD,

10

fibromyalgia, insomnia, and chronic lower-back pain. (AR 483.) Her treatment plan included physical therapy, hip and shoulder steroid injections, and x-rays; the medications baclofen and amitriptyline;[12] and exercise and weight loss. (AR 483-84.)

On November 5, 2011, Dr. Yang's examination findings and assessment were consistent with her findings on October 22. (See AR 475-76.) She administered steroid injections in Plaintiff's right hip and shoulder and recommended that she continue taking baclofen and amitriptyline. (AR 477.)

On January 5, 2012, the ALJ found Plaintiff not disabled. (AR 15-20.) In doing so, the ALJ summarized the opinions of the consulting doctors and examining physician Hoang. (AR 18.) He gave "significant weight" to Dr. Hoang's assessment "because he examined [Plaintiff] and his conclusions are not rebutted by any treating source." (Id.) The ALJ did not address Dr. Yang's

---

http://www.webmd.com/pain-management/tc/trochanteric-bursitis-topic-overview (last updated Aug. 2, 2012). "The trochanteric bursa is a large sac separating the greater trochanter of the hip and the muscles and tendons of the thighs and buttock." Id.

[11]The subacromial bursa is a sac of fluid that separates the acromion from the rotator cuff in the shoulder. See What is subacromial bursitis?, UNC School of Medicine, http://www.med.unc.edu/fammed/fammedcenter/about-us/services/sportsmedicine/ (last accessed June 12, 2014).

[12]Baclofen acts on the spinal cord nerves and decreases the number and severity of muscle spasms caused by multiple sclerosis or spinal cord diseases; it also relieves pain and improves muscle movement. Baclofen Oral, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682530.html (last updated Sept. 1, 2010). Amitriptyline is a tricyclic antidepressant used to treat symptoms of depression. Amitriptyline, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682388.html (last updated Aug. 1, 2010).

11

treatment notes (see AR 15-20), which were already in the record (AR 25, 472-84).

Plaintiff requested review of the ALJ's decision and submitted several additional medical records to the Appeals Council. (AR 8, 508-77.) The council reviewed the new evidence and ordered that it be made part of the administrative record but concluded that it "d[id] not provide a basis for changing the [ALJ's] decision." (AR 1-5.) The new evidence included, among other things, additional treatment records and a "Physical Residual Functional Capacity Questionnaire" from Dr. Yang. (See AR 508-77.) The treatment records show that Dr. Yang saw Plaintiff on December 29, 2011, and March 8, April 5, and May 17, 2012. (AR 525-48.) On those dates, physical exams revealed tenderness and abnormal range of motion of both shoulders (AR 527, 533, 539, 546), tenderness on palpation of the cervical and lumbar spine (AR 527-28, 533-34, 539, 546), spasm of the thoracic- and lumbar-spine muscles (AR 527-28, 533-34, 539, 546), positive straight-leg-raising tests bilaterally (AR 528, 534, 539, 546), tenderness on palpation and abnormal range of motion of the hips (AR 528, 534, 539, 546), tenderness on palpation of the right foot (AR 528, 534, 540, 546), and positive findings at 16 of 18 trigger points (AR 528, 534, 540, 546). Plaintiff had normal sensation, motor strength, gait, stance, and reflexes. (AR 528, 534, 540, 546.) Dr. Yang also noted the results of a January 12, 2012 lumbar-spine MRI, which showed "multiple disc protrusions, worse in L4-L5, and mild to mod[erate] facet joint effusion in L3-4 and L2-3." (AR 529, 535; see also AR 575-77 (MRI report).)

1    Dr. Yang recommended that Plaintiff continue physical
2 therapy (AR 536, 541, 548) and prescribed additional medications,
3 including a Lidoderm patch[13] (AR 548), Neurontin "for lower back
4 pain and [fibromyalgia]"[14] (id.), and Cymbalta for fibromyalgia[15]
5 (AR 535).  She also administered an additional steroid injection
6 (AR 529, 536) and noted that Plaintiff should have an "ortho
7 spine consult if her back pain persists" (AR 541, 536) and would
8 be "refer[red] to epidural inj[ection] if her back pain persists
9 after" physical therapy (AR 530).

10   Dr. Yang's physical-RFC questionnaire, dated April 5, 2012,
11 listed Plaintiff's diagnoses as degenerative disc disease of the
12 lumbar spine, fibromyalgia, and "b. trochanteric bursitis."  (AR
13 517.)  She noted that her assessment was supported by "trigger
14 point 18/18," tenderness on palpation of the trochanteric bursa,
15 tenderness in the lumbar spine, and positive straight-leg-raising
16 tests.  (Id.)  She believed Plaintiff could walk two blocks
17 without resting, sit for 30 minutes and stand for 15 minutes at a

---

[13]Lidoderm, or lidocaine, is a local anesthetic used to relieve the pain of postherpetic neuralgia.  Lidocaine Transdermal Patch, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a603026.html (last updated June 13, 2013).

[14]Neurontin, or gabapentin, is an anticonvulsant used to treat seizures, postherpetic neuralgia, and restless leg syndrome.  Gabapentin, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a694007.html (last updated July 15, 2011).

[15]Cymbalta, or duloxetine, is a selective serotonin and norepinephrine reuptake inhibitor used to treat depression, generalized anxiety disorder, bone and muscle pain, and pain and tingling caused by diabetic neuropathy and fibromyalgia.  Duloxetine, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a604030.html (last updated Feb. 15, 2013).

time, sit for four hours and stand for four hours total in an eight-hour day, lift and carry less than 10 pounds frequently and 10 to 20 pounds occasionally, and never lift or carry 50 pounds. (AR 519-20.) Dr. Yang believed that in an eight-hour workday, Plaintiff would need to walk five minutes every 30 minutes; shift at will from sitting, standing, or walking; and take unscheduled 15-minute breaks every two hours. (Id.) She believed Plaintiff could reach, perform fine manipulations, and grasp or turn objects each for only 20 percent of the workday and could bend or twist at the waist each for only 10 percent of the workday. (AR 520.) Dr. Yang believed that Plaintiff's pain and other symptoms would "[c]onstantly" interfere with her attention and concentration (AR 518) and that her impairments or treatment would cause her to be absent from work about three times a month (AR 521). She stated that her description of Plaintiff's symptoms and limitations applied as early as "2 years ago." (Id.)

C.  Discussion

Remand is necessary because Dr. Yang's questionnaire renders the ALJ's RFC assessment unsupported by substantial evidence. See Brewes, 682 F.3d at 1163. The ALJ credited the opinion of examining physician Hoang for two reasons: he had examined Plaintiff and his conclusions were "not rebutted by any treating source." (AR 18.) Dr. Yang, however, also examined Plaintiff, and her opinion differed in material respects from Dr. Hoang's. Because the ALJ explicitly relied on an absence of any contrary treating-physician opinion in adopting Dr. Hoang's opinion, Dr. Yang's findings might have changed the outcome of the case. See

14

Borrelli, 2014 WL 1492736, at *1 (remanding when ALJ "explicitly based his decision on the absence of recent medical records" and thus new records that "reflect consistent and ongoing efforts to resolve [plaintiff's] symptoms . . . might have changed the outcome of the case").

Indeed, Dr. Yang's opinion of Plaintiff's functional capacity – such as her finding that Plaintiff could stand and walk only four hours in an eight-hour day, lift and carry only 20 pounds occasionally and less than 10 pounds frequently, bend and twist at the waist each only 10 percent of the workday, and reach only 20 percent of the workday – is inconsistent with the ALJ's finding that Plaintiff could perform a "full range" of medium work.  See §§ 404.1567(c), 416.967(c) (medium work involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds"); SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) ("full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday" and "usually requires frequent bending-stooping").  Such limitations, if credited, could potentially lead the ALJ to find Plaintiff disabled, although it is impossible to determine that for certain because they were not all presented to the VE in any hypothetical.  See Borrelli, 2014 WL 1492736, at *1 (remanding in part because "the new evidence suggests that neither the judge nor the vocational expert posed a hypothetical that accurately reflects [plaintiff's] abilities and limitations").

Moreover, as a treating physician, Dr. Yang's opinion is generally entitled to more weight than the opinion of an

examining doctor, see Lester, 81 F.3d at 830; §§ 404.1527(c)(2), 416.927(c)(2) ("[g]enerally, we give more weight to opinions from your treating sources"); further, unlike Dr. Hoang, Dr. Yang reviewed several of Plaintiff's test results, including x-rays and a January 12, 2012 lumbar-spine MRI, before rendering her opinion (see AR 483, 534-35, 540, 547, 575; see also AR 403 (Dr. Hoang's report stating "REVIEW OF MEDICAL RECORDS: None")); §§ 404.1527(c)(6), 416.927(c)(6) ("the extent to which an acceptable medical source is familiar with the other information in your case record [is a] relevant factor[] that we will consider in deciding the weight to give to a medical opinion"). And although Dr. Yang's assessment postdates the ALJ's decision by three months, she treated Plaintiff three times before the ALJ issued his decision and stated that her assessment of Plaintiff's limitations applied as of two years earlier. As such, it relates to the period on or before the date of the ALJ's decision.[16] See Taylor 659 F.3d at 1232-33 (treating physician opinion that postdated ALJ decision "related to the period . . . before the ALJ's decision" because it "concerned his assessment of [plaintiff's] mental health since his alleged disability onset date" and before expiration of disability insurance, during which time physician examined plaintiff twice, supervised treating

---

[16] As the Commissioner notes, Dr. Yang checked a box on the RFC questionnaire indicating that Plaintiff's impairments had not lasted or could not be expected to last for at least 12 months (J. Stip. at 12 (citing AR 518)), but that appears to be an error because it conflicts with her express opinion that Plaintiff's limitations had existed as described for up to two years (AR 521). In any event, the ALJ can consider that contradiction when determining on remand the weight to be accorded Dr. Yang's opinion.

16

nurse practitioner, and approved nurse practitioner's prescriptions).

Considering the evidence as a whole, including the evidence submitted to the Appeals Council and made part of the administrative record, the ALJ's RFC assessment is not supported by substantial evidence.  As such, remand is warranted.  See Bayliss, 427 F.3d at 1217.

**VI.  CONCLUSION**

When error exists in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam) (internal quotation marks omitted); Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004).  Accordingly, remand, not an award of benefits, is the proper course in this case.  See Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1136, 1138 (9th Cir. 2011) (remand for automatic payment of benefits inappropriate unless evidence unequivocally establishes disability).  On remand, the ALJ should determine the weight to be accorded Dr. Yang's opinion and reassess Plaintiff's RFC in light of the evidence made part of the administrative record by order of the Appeals Council.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED** that (1) the decision of the Commissioner is REVERSED; (2) Plaintiff's request for remand is GRANTED; and (3) this action is REMANDED for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment on all parties or their counsel.

DATED: June 18, 2014

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge